## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY D. PETTY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 7013 |
| v. | ) | |
| | ) | Honorable Wayne R. Anderson |
| CITY OF CHICAGO, and CHICAGO | ) | |
| POLICE OFFICERS MICHAEL | ) | |
| CONWAY, MARK REGAL, GREGORY | ) | |
| DANZ, WILLIAM DAVIS, HARRY | ) | |
| FENNER, JOSEPH O'CARROLL, | ) | |
| ALLEN LEE, JAMIE KANE, | ) | |
| J.WEITZMAN, and ELIZABETH | ) | |
| DAWSON, each individual sued in his or | ) | |
| her individual capacity | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

### THIRD AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, TIMOTHY D. PETTY, by and through his attorney,

MICHAEL W. CONDON, and for his Complaint at Law against the Defendants, CITY

OF CHICAGO, MICHAEL CONWAY, MARK REGAL, GREGORY DANZ,

WILLIAM DAVIS, HARRY FENNER, JOSEPH O'CARROLL, ALLEN LEE, JAMIE

KANE, JOSHUA WEITZMAN, and ELIZABETH DAWSON, states as follows:

### JURISDICTION AND VENUE

1.      This is a civil action for damages arising under 42 U.S.C. § 1983 and the

Fourth and Fourteenth Amendments of the United States Constitution. This Court has

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Venue in this Court is proper

pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants in this case

reside in this District.

1

## THE PARTIES

2.      Plaintiff Timothy Petty is an Illinois citizen and a resident of Chicago, Illinois.

3.      On October 18, 2003, and all relevant times thereafter, the Defendant City of Chicago was an entity that employed police officers and peace officers through the Chicago Police Department.

4.      On October 18, 2003, and all relevant times thereafter, Defendant Michael Conway, Star #20246, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

5.      On October 18, 2003, and all relevant times thereafter, Defendant Mark Regal, Star #20592, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

6.      On October 18, 2003, and all relevant times thereafter, Defendant Gregory Danz, Star #20111, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

7.      On October 18, 2003, and all relevant times thereafter, Defendant William Davis, Star #20166, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

8.      On October 18, 2003, and all relevant times thereafter, Defendant Harry Fenner, Star #20625, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

9.      On October 18, 2003, and all relevant times thereafter, Defendant Joseph O'Carroll, Star #20805, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

2

10.     On October 18, 2003, and all relevant times thereafter, Defendant Allen Lee, Star #20945, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

11.     On October 18, 2003, and all relevant times thereafter, Defendant Jamie Kane, Star #01194, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

12.     On October 18, 2003, and all relevant times thereafter, Defendant Joshua Weitzman, Star #20307, was a duly sworn police officer acting in the scope of his employment for the City of Chicago and/or the Chicago Police Department.

13.     On October 18, 2003, and all relevant times thereafter, Defendant Elizabeth Dawson, Star #9891, was a duly sworn police officer acting in the scope of her employment for the City of Chicago and/or the Chicago Police Department.

14.     All individual Defendants named above are being sued in their individual capacities.

### ALLEGATIONS OF FACT GIVING RISE TO ALL COUNTS

15.     On October 18, 2003, at approximately 1:25 a.m., at 5816 North Ridge, Chicago, Cook County, Illinois, two unknown persons fired from handguns at Frederick Tarver, Lowell Hubbard, Sebastian Moore, Mario Parker, Sergio Miller a/k/a Srdjen Kostic, and Albert Council.

16.     As a result of the shots fired, Albert Council died.

17.     As a result of the shots fired, Lowell Hubbard and Sebastian Moore were wounded.

18.     Shortly after the shootings on October 18, 2003, Chicago Police Officers G. Kalfas, Star #19329, and Chicago Police Officer G. Johnson, Star #19324, took a

description of the alleged shooters from Sebastian Moore, Lowell Hubbard, and Frederick Tarver, who each described their assailants as two unknown offenders, black in race, 16-18 years of age, and 5'0-5'5 ½ inches tall, wearing all black, with skull caps and masks.

19.     At least one of the individuals/victims who was present at the time of the shootings advised Defendants on October 18, 2003 that those present at the time of the shootings were drinking alcohol and/or taking drugs before the shootings. Several of the other individuals/victims present at the shooting subsequently confirmed that those present were drinking alcohol and/or taking drugs before the shootings.

20.     When interviewed later on October 18, 2003 by Detectives William Davis, Star #20166, and Gregory Danz, Star #20111, Moore related that he had no idea who the shooters were or why he got shot.

21.     Defendant Elizabeth Dawson was one of the first police officers to arrive at the scene of the shooting and also took Mario Parker and Frederick Tarver into custody after the shootings and transported Parker and Tarver from the scene to the police station.

22.     While Tarver advised Officers Kalfas and Johnson at the scene that he could not identify the shooters, Defendant Dawson falsely advised Defendants Davis and Danz that Tarver had identified one of the shooters as "Spank."

23.     On or about October 18, 2003, Defendant Officers Michael Conway, Mark Regal, Gregory Danz, William Davis, Harry Fenner, Joseph O'Carroll, Allen Lee, Jamie Kane, Joshua Weitzman, and Elizabeth Dawson, acting as employees of the City of Chicago, knew or should have known that Frederick Tarver, Lowell Hubbard, Sebastian Moore, Mario Parker, and Sergio Miller a/k/a Srdjen Kostic, could not identify the shooters because both shooters were wearing black, with skull caps and masks.

4

24.    Despite Tarver's inability to identify the shooters, Tarver was held against his will on October 18, 2003 at Area 3 Violent Crimes for 19 hours by Officers Dawson and Davis, Detectives Danz, Fenner and Weitzman and other unknown Chicago Police Officers.

25.    At the time that Tarver was held in custody, the Chicago Police Department and the Defendant Officers knew that Frederick Tarver was a gang member and a convicted felon.

26.    At Area 3 Violent Crimes, Tarver was held in a locked room which had no windows, and only contained cement blank walls, a hard tile floor, and a hard wooden bench, which was bolted to the wall.

27.    Tarver was locked in the aforementioned room with no access to food, water, or a toilet.

28.    Tarver was not allowed to leave, change clothes, and/or sleep (except on a hard wooden bench), even though Tarver repeatedly requested to go home.

29.    During Tarver's *de facto* incarceration, Defendants Davis, Danz, Fenner, and Weitzman told Tarver that he would be unable to leave the police station until he identified a person he allegedly knew as "Spank" as one of the shooters in a photo array.

30.    After thirteen hours in custody, Tarver identified a person he allegedly knew as "Spank" as one of the shooters in a photo array.

31.    Tarver's identification as "Spank" as one of the shooters was a direct result of threats made by Defendants Davis, Danz, Fenner, and Weitzman, and other unknown Chicago Police Officers. Defendants' actions broke Tarver's will, made Tarver desirous of leaving his unlawful restraint, and made Tarver fearful of being wrongfully charged and unlawfully incarcerated.

32.     On October 18, 2003, Defendants Conway, Regal, Dawson, Danz, Davis, Fenner, Weitzman, Kane, Lee, and O'Carroll knew that Plaintiff Petty had a nickname of "Spank" but also knew that Petty did not match the description given of the two shooters since Petty was 5'11 and 22 years old.

33.     In the days and weeks following October 18, 2003, Tarver received repeated and increasingly harassing telephone and in-person contacts from Chicago police officers, demanding that he return to police headquarters for further questioning. Tarver refused these demands and advised that he had nothing further to tell the police.

34.     On November 29, 2003, Petty was taken into custody without probable cause and was unlawfully arrested by the Defendants, even though Defendants knew that Tarver's identification of Petty was coerced and that Tarver could not truthfully identify Petty as being present and/or involved in the shootings.

35.     After being taken into custody on November 29, 2003, Petty was charged with 3 counts of First Degree Murder, 5 counts of Attempted First Degree Murder, 2 counts of Aggravated Battery with a Firearm, 5 counts of Aggravated Discharge of a Firearm, 6 counts of Aggravated Battery, 2 counts of Unlawful Use of Weapon by a Felon, and 4 counts of Aggravated Unlawful Use of a Weapon.

36.     Upon being taken into custody on November 29, 2003, Petty informed Defendants Conway, Regal, and other unknown officers that he was in a different location at a public establishment at the time of the shootings but Defendants did not adequately investigate Petty's alibi.

37.     On December 1, 2003, Chicago Police Officers, including but not limited to Defendants Regal and Conway, maliciously broke down the door of Tarver's home (where Tarver and Moore both were at the time) with guns drawn, knowing that such

actions would cause Tarver and Moore to fear for their life and freedom. Officers then handcuffed Tarver and Moore and brought both to the police station, even though neither was a suspect in the shootings and there was no probable cause to arrest Tarver or Moore.

38.     Although not a suspect in the shootings and supposedly not under arrest at the time, Tarver was locked in an interrogation room against his will for approximately ten hours on December 1, 2003.

39.     Upon reasonable information and belief, Moore was also locked in an interrogation room against his will for an extended period of time on December 1, 2003.

40.     On December 1, 2003, Chicago Police Officers, including but not limited to Defendants Kane, Fenner and Lee, acting maliciously, willfully, wantonly, and in total disregard of both Petty and Tarver's rights, threatened Tarver with violating his probation if he did not identify Petty in a line-up as one of the shooters.

41.     On December 1, 2003, Defendants Conway, Regal, Danz, Davis, Fenner, and O'Carroll knew that Tarver, a convicted felon and gang member, was unable to identify either of the shooters, was fearful of incarceration, was fearful of violating his probation, and was fearful of being threatened by police officers.

42.     Defendants knew or should have known that any identification of Petty as a shooter by Tarver and/or Moore was based on threats, assaults, unlawful confinement, and unlawful arrests by the Defendants and other members of the Chicago Police Department.

43.     Defendants Dawson, Conway, Regal, Danz, Davis, Fenner, O'Carroll, Lee, Kane, and Weitzman, by their actions and in concert with each other, acted maliciously, willfully and wantonly, and in total disregard of Petty's rights, as well as the rights of Tarver and Moore.

44.    Defendants' illegal and unconstitutional conduct included but was not limited to coercing Tarver and Moore into falsely identifying Petty as one of the shooters.

45.    At no time (either before or after Petty's arrest) did Defendants obtain any physical evidence implicating Petty in the shootings.

46.    Despite the lack of any physical evidence whatsoever, Petty was charged and prosecuted by the Cook County State's Attorney's Office.  The prosecution of Petty occurred because of the illegal and unconstitutional conduct of Defendants in obtaining false and coerced identifications of Petty by Tarver and Moore.

47.    At no time did any of the Defendants or anyone else at the Chicago Police Department advise prosecutors at the Cook County State's Attorney's Office about their illegal actions and how they obtained false identifications from Tarver and Moore.

48.    On March 24, 2004, Frederick Tarver and other named Plaintiffs filed a civil lawsuit against the City of Chicago, Phil Cline, Terry G. Hillard, and Chicago Police Officers Scott, Blackledge, Gray, Hightower, Mason, Milz, Easter, Frazier, Howard, Michael Conway, Mark Regal, Elizabeth Dawson, Gregory Danz, William Davis, Harry Fenner, Joshua Weitzman, Jamie Kane, A. Lee, L. Thezan, J. Evans, Joseph O'Carroll, J. Lopez, Gary Bush, Charles Daley, W. Ruck, P. O'Donovan, James Egan, Edward Carroll, John Haniacek, Kevin Bor and Chicago Police Sergeants Walsh, Howard, and Holy (see the First Amended Complaint filed in case 03-C-6620).

49.    Tarver alleged in his lawsuit that, on October 18, 2003, he was held against his will, intimidated and coerced by Defendants into providing false testimony and/or evidence.

50.    Defendants also knew that Tarver gave a deposition under oath on October 14, 2005, in which Tarver stated that he had been held against his will and coerced into

falsely identifying Petty as the shooter. Nevertheless, Defendants took no action to terminate the criminal case against Petty and in fact the criminal case against Petty continued.

51.    The Defendants in this case were aware of the allegations made by Tarver in his civil lawsuit filed in March 2004 but took no action thereafter.

52.    On April 14, 2006, the City of Chicago settled Tarver's lawsuit, paying damages to Tarver in the process.

53.    On August 23, 2006, Petty was found not guilty of all counts against him after a bench trial in front of the Honorable Clayton Crane at 2650 South California Avenue, Chicago, Illinois.

54.    Petty was held in continuous custody at the Chicago Police Station and Cook County Jail from November 29, 2003 until August 23, 2006.

### COUNT I

**(42 U.S.C. 1983—Due Process—Right to Fair Trial—All Individual Defendants)**

55.    Plaintiff realleges and reincorporates all previous allegations as part of Count I.

56.    At all relevant times, the Individual Defendants were acting under color of law and within the scope of their employment with the City of Chicago.

57.    As described more fully above, the Individual Defendants, while acting either individually, jointly, and/or in conspiracy, deprived Plaintiff of his constitutional right to a fair trial, as protected by the Due Process Clause of the Constitution.

58.    The Fifth and Fourteenth Amendments to the Constitution of the United States prohibit the malicious acquisition and use of false or misleading witness statements

inculpating persons when, as here, investigators knew or should have known that the statements obtained were flawed.

59.     The Fifth and Fourteenth Amendments to the Constitution of the United States prohibit investigating officers from concealing exculpatory information from prosecutors and misadvising them about the investigative facts of a case.

60.     Defendants violated the above precepts when they successfully induced prosecutors to wrongfully prosecute Plaintiff for murder and other crimes that he did not commit.

61.     Defendants' actions included, but are not limited to, depriving prosecutors and Plaintiff of exculpatory material and information.  This exculpatory material and information should have been provided by Defendants to prosecutors, who would have then been in a position to either drop the prosecution against Plaintiff, or, alternatively, prosecutors would have been legally required under Brady v. Maryland to disclose this exculpatory material and information to Plaintiff.

62.     As a direct and proximate result of the violation of his constitutional right to a fair trial, Plaintiff Timothy Petty suffered damages.

63.     Defendants' misconduct was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

64.     As a result of their misconduct, Defendants are liable to Plaintiff pursuant to the Fifth and Fourteenth Amendments to the United States and Title 42, United States Code, Section 1983.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory and punitive damages against Defendant Chicago Police Officers MICHAEL CONWAY, MARK REGAL, GREGORY DANZ, WILLIAM DAVIS, HARRY FENNER, JOSEPH

O'CARROLL, ALLEN LEE, JAMIE KANE, J. WEITZMAN, and ELIZABETH

DAWSON, in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY

SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other

relief the Court deems equitable.  Plaintiff also specifically requests the recovery of all

attorneys' fees incurred by Plaintiff during the prosecution of this case, as provided for

under 42 U.S.C. § 1988.

## COUNT II

### (42 U.S.C. 1983—Conspiracy to Deprive Constitutional Rights—All Individual Defendants)

65.     Plaintiff realleges and reincorporates all previous allegations as part of

Count II.

66.     The Individual Defendants knowingly conspired to frame Plaintiff for

murder and other crimes that Plaintiff did not commit, therein depriving Plaintiff of his

constitutionally rights to due process and to a fair trial.

67.     The Individual Defendants conspired by their concerted action to

accomplish an unlawful purpose by an unlawful means.

68.     In furtherance of the conspiracy, each co-conspirator committed overt acts

and was an otherwise willful participant in the conspiracy.

69.     Defendants' conspiratorial conduct included, but was not limited to,

depriving prosecutors and Plaintiff of exculpatory material and information.  This

exculpatory material and information should have been provided by Defendants to

prosecutors, who would have then been in a position to reassess and drop the prosecution

against Plaintiff, or alternatively, would have been required under Brady v. Maryland to

disclose this exculpatory material to Plaintiff.

11

70.    As a direct and proximate result of the violation of the conspiracy amongst the Defendants, Plaintiff Timothy Petty suffered damages, including but not limited to emotional distress.

71.    Defendants' misconduct was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

72.    Defendants' misconduct renders them liable to Plaintiff pursuant to the Fifth and Fourteenth Amendments to the United States and Title 42, United States Code, Section 1983.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory and punitive damages against Defendant Chicago Police Officers MICHAEL CONWAY, MARK REGAL, GREGORY DANZ, WILLIAM DAVIS, HARRY FENNER, JOSEPH O'CARROLL, ALLEN LEE, JAMIE KANE, J. WEITZMAN, and ELIZABETH DAWSON, in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable.  Plaintiff also specifically requests the recovery of all attorneys' fees incurred by Plaintiff during the prosecution of this case, as provided for under 42 U.S.C. § 1988.

## COUNT III

### (*Monell* claim—Defendant City of Chicago only)

73.    Plaintiff realleges and reincorporates all previous allegations as part of Count III.

74.    At all relevant times, the City of Chicago maintained a custom, policy or practice of detaining persons whom the police believed were witnesses to certain crimes

for extended periods of time against their will and confined them in locked interrogation rooms at police stations.

75.    At a hearing conducted before a federal District judge in *First Defense Legal Aid v. City of Chicago*, 01 C 9671, the federal court found, based largely on admissions made by Chicago Police Superintendent Phil Cline and another high ranking member of the Police, that the City's policies included the following:

   a.    Witnesses are taken to police stations for questioning, are thoroughly searched and then "secured" by being locked in small, windowless interrogation rooms, which are lacking toilets or running water and typically are furnished only with a metal bench bolted to the wall;

   b.    Witnesses typically are held in these rooms for many hours and in some cases days;

   c.    Counsel for these witnesses who appear at the police station are refused access to their clients;

   d.    This confinement of witnesses, as described above, is specifically designed to help witnesses "overcome their reluctance" to cooperate with the police;

   e.    Witnesses confined under these conditions are not free to leave the police station and are, in fact, confined there against their will.

76.    The City's custom, policy and practice described above at all relevant times was widespread, permanent and well-settled.  In fact, the above custom, policy and practice was vigorously defended by attorneys for the City of Chicago in *First Defense Legal Aid v. City of Chicago.*

77.    The City's custom, policy and practice described above caused the unlawful seizure and detention of Frederick Tarver and was also the proximate cause of Tarver's coerced statement in which Tarver falsely identified Plaintiff as being responsible for the shooting of Albert Council, Lowell Hubbard and Sebastian Moore on October 18, 2003.

78.    The City's custom, policy and practice described above led to inculpatory but "false" evidence being created and used against Petty.

79.    This false inculpatory evidence against Petty was created and used by Defendants to falsely arrest, falsely imprison, and maliciously prosecute Petty.

80.    This false inculpatory evidence against Petty was used by Defendants to violate Petty's constitutional rights, including but not limited to Petty's right to receive a fair trial.

81.    On April 5, 2005, Kyle Davis, on behalf of a class of similarly situated persons, filed a lawsuit against the City of Chicago (05 C 1967) complaining of the custom, policy and practice described above.

82.    In July 2007, the City of Chicago settled Davis' lawsuit and paid the plaintiffs $250,000, pursuant to the settlement of the case.

83.    As part of the release and settlement entered into between the parties, the City of Chicago implemented a Special Order (No. 07-05) regarding the treatment of witnesses. The revised Special Order states *inter alia* that (a) witnesses shall be and remain free to leave, (b) witnesses are typically given a "witness advisory" which advises witnesses that "you are free to leave when you want," (c) conditions for witnesses at police facilities shall be reasonable, (d) witnesses are entitled to reasonable access to

bathroom facilities, food and water, and (e) investigating offices will "ensure the comfort and overall well-being" of witnesses while at police facilities.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands judgment against Defendant CITY OF CHICAGO, in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable. Plaintiff also specifically requests the recovery of all attorneys' fees incurred by Plaintiff during the prosecution of this case, as provided for under 42 U.S.C. § 1988.

## COUNT IV

### (State Law claim--False Imprisonment-All Defendants)

84.     Plaintiff realleges and reincorporates all previous allegations as part of Count IV.

85.     Defendants, City of Chicago, Michael Conway, Mark Regal, Gregory Danz, William Davis, Harry Fenner, Joseph O'Carroll, Allen Lee, Jamie Kane, Joshua Weitzman, and Elizabeth Dawson, acting for themselves, and/or in concert with each other, in their individual and official capacities and as authorized agents and servants of the Defendant, City of Chicago, arrested and/or caused the arrest of Petty for first degree murder, attempted first degree murder, aggravated battery with a firearm, aggravated discharge of a firearm, aggravated battery, unlawful use of a weapon by a felon, and aggravated unlawful use of a weapon without reasonable grounds to arrest and without legal cause, by restraining him, handcuffing him, and caused him to be subsequently held for more than 2 ½ years (997 days) in the Chicago Police Department and the Cook County Department of Corrections.

15

86.     As a direct and proximate result of the false imprisonment of Petty by Defendants, Petty suffered damages.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory damages against the Defendant, CITY OF CHICAGO, and its employees, Chicago Police Officers MICHAEL CONWAY, MARK REGAL, GREGORY DANZ, WILLIAM DAVIS, HARRY FENNER, JOSEPH O'CARROLL, ALLEN LEE, JAMIE KANE, JOSHUA WEITZMAN, and ELIZABETH DAWSON, and punitive damages against the individual defendants in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable.

## COUNT V

### (State Law claim--Malicious Prosecution-All Defendants)

87.     Plaintiff realleges and reincorporates all previous allegations as part of Count V.

88.     By procuring false identifications, initiating a criminal complaint, and commencing and continuing a criminal case against Plaintiff, specifically, the case of People v. Timothy Petty, Case Number 03 CR 28185, in the Circuit Court of Cook County, the Defendants, City of Chicago, Michael Conway, Mark Regal, Gregory Danz, William Davis, Harry Fenner, Joseph O'Carroll, Allen Lee, Jamie Kane, Josh Weitzman, and Elizabeth Dawson have maliciously prosecuted Plaintiff, in violation of Illinois law.

89.     All criminal charges against Timothy Petty were terminated in his favor when he was found not guilty of all charges.

90.     Probable cause did not exist for the prosecution of Petty.

91.     Defendants acted with malice and/or with willful and wanton disregard of Petty's rights.

92.     As a direct and proximate result of the malicious prosecution against Petty, Petty suffered damages.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory damages against the Defendant, CITY OF CHICAGO, and its employees, Chicago Police Officers MICHAEL CONWAY, MARK REGAL, GREGORY DANZ, WILLIAM DAVIS, HARRY FENNER, JOSEPH O'CARROLL, ALLEN LEE, JAMIE KANE, JOSHUA WEITZMAN, and ELIZABETH DAWSON, and punitive damages against the individual defendants in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable.

## COUNT VI

### (State Law claim--Intentional Infliction of Emotional Distress — All Defendants)

93.     Plaintiff realleges and reincorporates all previous allegations as part of Count VI.

94.     The Defendants, CITY OF CHICAGO, MICHAEL CONWAY, MARK REGAL, GREGORY DANZ, WILLIAM DAVIS, HARRY FENNER, JOSEPH O'CARROLL, ALLEN LEE, JAMIE KANE, J. WEITZMAN, and ELIZABETH DAWSON, intentionally engaged in extreme and outrageous behavior against Plaintiff, Timothy Petty.

95.     Defendants' outrageous behavior included but was not limited to "manufacturing" false evidence against Plaintiff and deceiving prosecutors about the

17

actual evidence against Plaintiff in Defendants' attempt to have Plaintiff convicted for a crime he did not commit.

96.     Defendants' conduct continued from the date of the shootings until Petty was released from jail after being acquitted on August 23, 2006.

97.     Defendants intended to inflict emotional distress upon Plaintiff and/or knew that their conduct was likely to result in severe emotional distress.

98.     Defendants' conduct was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

99.     Defendants' outrageous behavior caused Plaintiff to suffer severe emotional distress, including anxiety, fear, anger, depression, and humiliation.

100.    As a proximate result of Defendants' intentional acts or omissions, Plaintiff sustained severe and extreme distress that caused him to sustain personal and pecuniary damages.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory damages against the Defendant, CITY OF CHICAGO, and its employees, Chicago Police Officers MICHAEL CONWAY, MARK REGAL, GREGORY DANZ, WILLIAM DAVIS, HARRY FENNER, JOSEPH O'CARROLL, ALLEN LEE, JAMIE KANE, JOSHUA WEITZMAN, and ELIZABETH DAWSON, and punitive damages against the individual defendants in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable.

## COUNT VII

### (State Law claim--Civil Conspiracy—All Individual Defendants)

101.    Plaintiff realleges and reincorporates all previous allegations as part of Count VII.

102.    As described more fully in the body of this pleading, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by an unlawful means, in violation of Illinois law.

103.    Defendants' conspiracy was designed to *inter alia* falsely imprison and maliciously prosecute Plaintiff for crimes he did not commit.

104.    As described more fully in the body of this pleading, Defendants committed tortious, illegal and/or overt acts in furtherance of their conspiracy and were otherwise willful participants in joint activity.

105.    Defendants' misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory damages against the Defendant, CITY OF CHICAGO, and its employees, Chicago Police Officers MICHAEL CONWAY, MARK REGAL, GREGORY DANZ, WILLIAM DAVIS, HARRY FENNER, JOSEPH O'CARROLL, ALLEN LEE, JAMIE KANE, JOSHUA WEITZMAN, and ELIZABETH DAWSON, and punitive damages against the individual defendants in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable.

19

## COUNT VIII

### (*Respondeat Superior*—Defendant City of Chicago only)

106.    Plaintiff realleges and reincorporates all previous allegations as part of Count VIII.

107.    At all relevant times, each of the Individual Defendant Officers named in this pleading were members and agents of the Chicago Police Department and were at all relevant times acting within the scope of their employment.

108.    As principal/employer of the Individual Defendants, Defendant City of Chicago is liable for the tortious actions committed by its agents/employees.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory damages against the Defendant, CITY OF CHICAGO, in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable.

## COUNT IX

### (Indemnification—Defendant City of Chicago only)

109.    Plaintiff realleges and reincorporates all previous allegations as part of Count IX.

110.    Under Illinois law, public entities are obligated to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.   (745 ILCS 10/9-102— "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee acting within the scope of his employment is liable....")

111.    At all relevant times, the Individual Defendant Officers named in this pleading were employees of the City of Chicago Police Department, and were acting within the scope of their employment when they committed the misconduct described herein.

WHEREFORE, Plaintiff, TIMOTHY PETTY, demands compensatory damages against the Defendant, CITY OF CHICAGO, in an amount in excess of THIRTY MILLION, NINE HUNDRED EIGHTY SEVEN DOLLARS AND NO CENTS ($30,000,987.00), plus costs of suit, and any other relief the Court deems equitable.

s/**MICHAEL W.CONDON**
Michael W. Condon, Atty. Bar No. 06192071
Jason W. Rose, Atty. Bar No. 06208130
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60243-3156
Ph:  630-773-4774
Fax: 630-773-4851
mcondon@hcbattorneys.com
jrose@hcbattorneys.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY D. PETTY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 7013 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Honorable Wayne R. Anderson |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2008, I electronically filed the foregoing *Third Amended Complaint at Law* with the Clerk of the U.S. District Court, Eastern Division, using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**TO:**   Scott J. Jebson                                Patrick M. Campanelli
City of Chicago, Department of Law         9760 South Roberts Road
Individual Defense Litigation                  Suite 1
30 North LaSalle Street                         Palos Hills, IL 60465
Suite 1400                                          patrickcampanelli@sbcglobal.net
Chicago, IL 60602
sjebson@cityofchicago.org

**s/MICHAEL W.CONDON**
Michael W. Condon, Atty. Bar No. 06192071
Jason W. Rose, Atty. Bar No. 06208130
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60243-3156
Ph: 630-773-4774
Fax: 630-773-4851
mcondon@hcbattorneys.com
jrose@hcbattorneys.com