IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY D. PETTY, | ) | |
| Plaintiff, | ) | |
| v. | ) | 07 C 7013 |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants, the City of Chicago, *et al.*, ask this Court to reconsider its judgment and

Order of January 12, 2012 (the "Order"). In that Order this Court granted in part and

denied in part the Defendants's Motion for Summary Judgment. (Doc. 148). In so holding,

the Court determined that disputed issues of material fact existed to preclude summary

adjudication on all but one of Plaintiff Timothy Petty's claims. As part of the Court's

ruling, the Court held that Petty could pursue his constitutional claims based on the

Defendants' alleged violations of his due process right to a fair trial under the Fifth and

Fourteenth Amendments to the United States Constitution and under *Brady v. Maryland*,

373 U.S. 83 (1963). Additionally, the Court determined that disputed issues of material fact

precluded summary adjudication of Petty's claim of conspiracy to commit due process

violations. The Court denied summary judgment on Petty's pendent state-law claims of

1

malicious prosecution, intentional infliction of emotional distress, civil conspiracy to imprison and maliciously prosecute, as well as his derivative claims against the City under the doctrine of *respondeat superior* and for indemnification. The Court granted summary judgment in the Defendants' favor on Petty's claim for false imprisonment.

The Defendants now ask this Court to reconsider its Order as it relates to the two constitutional claims. Having thoroughly reviewed and reconsidered its prior holding in this case in light of the additional briefing by the parties, the Court now reverses part of its original Order and grants summary judgment in favor of the Defendants on the two constitutional claims. As all of the remaining counts are supplemental claims under Illinois state law, the Court declines to exercise jurisdiction over those claims and dismisses this case for process in Illinois state court should Petty choose to proceed there.

## I.  Standard of Review

Although the Defendants do not articulate the procedural rule by which they bring their Motion, the Court presumes that the Motion is brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The Court entered the Order on January 12, 2012, and the Defendants brought their Motion to Reconsider on January 31, 2012, within the 28-day time limit for the Court to construe it as arising under Rule 59(e). Therefore, the Motion was brought timely. Under Rule 59(e) a district court may entertain a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). A district court reviews its prior judgment under

Rule 59(e) to determine whether "there exists a manifest error of law or fact so as to enable the court to correct its own errors and thus avoid unnecessary appellate procedures." *Divane v. Krull Elec. Co., Inc.*, 194 F.3d 845, 847 (7th Cir.1999), (citing *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996)); *see also Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). "However, it is well-settled that a Rule 59(e) motion is not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007) (internal citations omitted). In contrast to Rule 60(b), which is "an extraordinary remedy" authorizing the Court to grant relief to a party from a final judgment for certain enumerated reasons such as excusable neglect or fraud, relief under Rule 59(e) requires a "lower threshold of proof" and is not considered an "extraordinary remedy." *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995); *see also Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) (distinguishing the "more liberal standard of Rule 59(e)" from the "exacting standard of Rule 60(b)"). The denial of summary judgment against a party that was entitled to a grant of summary judgment merits reconsideration under Rule 59(e). *See Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998).

The decision to grant a Rule 59(e) motion lies in the absolute discretion of the district court. *See Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996). The opportunity to correct itself is a prerogative that the Court always enjoys, and therefore the Court now reconsiders its

prior ruling. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)) ("A court has the power to revisit prior decisions of its own ... in any circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' "); *see also Moro*, 91 F.3d at 875 (citing *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)) (Rule 59(e) allows a district court to correct its own errors).

## II. Discussion

### A. Petty's Brady Claim

The bulk of the disagreement between the parties concerns the proper application of *Brady v. Maryland*, 373 U.S. 83 (1963), to Petty's case, and whether Petty can maintain a due process challenge for the alleged misconduct by the Defendants and his resulting prosecution. Petty argues that this Court was correct in its determination that the Defendants violated his right to a fair trial under the Fifth and Fourteenth Amendments and under *Brady*. In holding for Petty, the Court found that a *Brady* claim could lie even though Petty was acquitted of the charges against him at trial. Relying on *Parish v. City of Chicago*, 594 F.3d 551 (7th Cir. 2009), the Court ruled that the inquiry under *Brady* for when evidence is suppressed "is not tied to the time of trial, but rather to the time at which the prosecution made its decision to proceed to trial." (Order at 12). The Court held that the record contained genuine issues of material fact as to the timing of Petty's awareness of the

potentially exculpatory evidence and its suppression, and then proceeded to review the degree of prejudice to Petty as a result of the suppression. The Court then concluded that Petty could maintain a viable constitutional claim for a violation of his due process right to a fair trial.

Upon further briefing by the parties, the Court changes its appraisal of the legal import of the disputed issues of fact regarding the timing of the disclosure of the allegedly suppressed exculpatory evidence against Petty. While there is a genuine issue of fact as to the length of time that the evidence may have been suppressed, and while that length may provide support for Petty's pendent state-law causes of action, because the evidence was not suppressed so as to prevent Petty's use of it at his trial, or suppressed for such a time as to deprive the the prosecutor of the opportunity to drop the charges against Petty, Petty cannot maintain a claim for violations of due process under the Fifth or Fourteenth Amendments under *Brady*.

As the Court already noted in the Order, a *Brady* violation consists of three elements, all of which the plaintiff must prove. *See Carvajal v. Dominguez*, 542 F.3d 561, 566-567 (7th Cir. 2008). A plaintiff must show: (1) the prosecution suppressed evidence, either willfully or inadvertently; (2) the evidence at issue was favorable to the accused, either being exculpatory or impeaching; and (3) the evidence was material to an issue at trial. *See Youngblood v. West Virginia*, 547 U.S. 867, 869-870 (2006); *United States v. Villasenor*, 664 F.3d

673, 683 (7th Cir. 2011); *United States v. Stallworth*, 656 F.3d 721, 731 (7th Cir. 2011); *United States v. Palivos*, 486 F.3d 250, 255 (7th Cir. 2007). Evidence is "suppressed" if "(1) the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002); *see also United States v. Are,* 590 F.3d 499, 510 (7th Cir. 2009); *United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir. 1996) (collecting cases).

The obligations of *Brady* extend to police officers, who must turn over potentially exculpatory evidence to prosecutors. *See Youngblood,* 547 U.S. at 870 (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995) ("[a] Brady violation occurs when the government fails to disclose evidence materially favorable to the accused ... even evidence that is known only to police investigators and not to the prosecutor.")); *see also Steidl v. Fermon*, 494 F.3d 623, 630-632 (7th Cir. 2007); *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). The government is under no obligation pursuant to *Brady* to disclose exculpatory evidence that the accused already knows. *See United States v. Mahalick*, 498 F.3d 475, 478-479 (7th Cir. 2007); *United States v. Dawson*, 425 F.3d 389, 393 (7th Cir. 2005). Although the government is required to turn over exculpatory evidence, any delay in turning over that evidence to the accused only offends due process under *Brady* if the delay prevented the accused from receiving a fair trial. *See Collier v. Davis*, 301 F.3d 843, 850 (7th Cir. 2002); *O'Hara*, 301 F.3d at 569; *Boss v.*

*Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). Indeed, all that *Brady* requires is that the evidence

be turned over before the end of the accused's trial, so that the accused can still make use

of it. *See United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The *Brady* rule is not a rule

of pretrial discovery."); *see also United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996);

*United States v. Allain*, 671 F.2d 248, 255 (7th Cir. 1982).

In its original Order, the Court determined that material questions of fact existed as

to whether the evidence in question was suppressed and thus whether Petty could prove

the second prong of the *Brady* inquiry. The Court then proceeded to an analysis of the third

prong of *Brady*. Upon further review, the Court now finds that while there are genuine

issues of fact as to *when* the suppressed evidence came to Petty's attention, there is no issue

as to the critical fact in a *Brady* analysis that Petty became aware of the evidence in time to

make use of the benefits of that evidence at his trial.

In their Motion to Reconsider, the Defendants draw the Court's attention to certain

facts, and certain state court documentation, that are dispositive of the suppression issue.

Frederick Tarver identified the information that Petty claims is exculpatory when Tarver

filed his complaint against the City alleging coercion by the Defendants in obtaining his

identification of Petty. (Def. SOF ¶ 35; Doc. 130-11, Pl. Exhibit P, Complaint, *Johnson, et al.,*

*v. City of Chicago, et al.*, Case No. 03 C 6620, U.S. District Court for the Northern District of

Illinois, Filed November 24, 2004).[1]  On October 14, 2005, Tarver testified at a deposition

for his civil suit against the City that "police officers conducting the lineup told Mr. Tarver

who to pick out of the lineup." (Def. SOF ¶ 36).  On January 12, 2006, Tarver testified on

Petty's behalf at Petty's hearing to suppress Tarver's identification testimony. (Def. SOF

¶¶ 39-47).  Petty made use of the evidence he obtained at that time because he called Tarver

to testify about the alleged coercion in both his suppression hearing and in his subsequent

criminal trial, which is exactly the information that Petty claims was withheld from him.

(Def. SOF ¶ 52; Doc. 120-16, Def. Exhibit P, Trial Transcript, *People v. Petty*, Case No. 03-CR-

28185, Circuit Court of Cook County, Illinois, Aug. 21, 2006, Pgs. 25-101).  Therefore, while

Petty may not have been aware of Tarver's suit the moment it was filed in 2004, Petty was

unquestionably aware of Tarver's allegations that the Defendants coerced him into

identifying Petty as the shooter by the time of Petty's suppression hearing in 2006. (Def.

SOF ¶¶ 34-46; Doc. 130-11, Pl. Exhibit P, Complaint, *Johnson, et al., v. City of Chicago, et al.*,

Case No. 03 C 6620, U.S. District Court for the Northern District of Illinois, Filed November

24, 2004).  Petty learned the details of Tarver's claims of coercion by the Defendants in time

to present this evidence both at Petty's suppression hearing and at his trial. (Def. SOF ¶¶

---

[1]References are to the Defendants' Statement of Facts submitted pursuant to Local Rule 56.1(a). Petty admitted that all 72 facts submitted by the Defendants are true, and the Court therefore deemed all of the Defendants' facts admitted. Throughout this Opinion, references to the Defendants' Statement of Facts is abbreviated to: "Def. SOF ¶ _."

34-46; ¶ 52; Doc. 120-16, Def. Exhibit P, Trial Transcript, *People v. Petty*, Case No. 03-CR-28185, Circuit Court of Cook County, Illinois, Aug. 21, 2006, Pgs. 25-101).

In the Order, the Court relied upon the Seventh Circuit's position in *Parish v. City of Chicago*, 594 F.3d 551 (7th Cir. 2009) that the inquiry under *Brady* for when evidence is suppressed "is not tied to the time of trial, but rather to the time at which the prosecution made its decision to proceed to trial." (Order at 12). Even under *Parish's* standard, however, there can be no dispute as to whether the prosecution might have decided to drop the charges against Petty had the Assistant State's Attorney been aware of the suppressed information. The Assistant State's Attorney *was* aware of the suppressed information prior to trial, because Petty brought a motion to suppress in which he brought the evidence to the attention of both the Assistant State's Attorney and the state court judge. The Assistant State's Attorney chose to oppose the motion to suppress, and to proceed to trial notwithstanding that evidence. Therefore, while *Parish* arguably expands the time period during which a *Brady* claim may be maintained to include pre-trial periods in certain circumstances, in the undisputed circumstances in this case, Petty cannot maintain a claim that the suppressed evidence, if brought to the prosecution's attention, might have caused the prosecution to alter its decision to proceed to trial.

The undisputed fact that Petty knew about the allegedly suppressed evidence by the time of his motion to suppress, and the undisputed fact that the prosecutors elected to

continue their prosecution of Petty in full awareness of that evidence and its delayed disclosure, are the dispositve facts that satisfy Petty's right to due process under *Brady* and extinguish any *Brady* claim. *See Collier*, 301 F.3d at 850; *O'Hara*, 301 F.3d at 569; *Boss*, 263 F.3d at 740. Upon that clarification, the Court now corrects its previous ruling. Correcting the Court's previous finding now shows that Petty has no *Brady* claim resulting from the alleged suppression of evidence of police coercion because the evidence was not suppressed within the meaning of *Brady* and its progeny.

B. *Petty's "Brady-type" Substantive Due Process Claim*

Having found in the prior Order that Petty's Fourteenth and Fifth Amendment claims could proceed under *Brady*, the Court did not need to address Petty's alternative theory of a "*Brady*-type" substantive due process claim against the Defendants. In light of the Court's reconsideration, Petty's alternative claim must now be addressed in the first instance.

There is no federal cause of action for malicious prosecution under § 1983. *See Newsome*, 256 F.3d at 752. Relying on *Johnson v. Saville*, 575 F.3d 656, 663 (7th Cir. 2009), Petty maintains that there is a viable cause of action arising under the Fourteenth Amendment for a violation of due process resulting from the police manufacturing evidence or coercing witnesses, and then failing to disclose that misconduct. But *Johnson* cannot be so broadly construed. First, the possible cause of action the court spoke of in

10

*Johnson* arises under the Fourth Amendment.  *See Id.*  In addition, the possible Fourth Amendment claim that the court identified in *Johnson* applies to claims for wrongful arrest, not malicious prosecution.  *See Johnson*, 575 F.3d at 663-664 (citing *McCullah v. Gadert*, 344 F.3d 655, 659 (7th Cir. 2003)) (a case for wrongful arrest); *see also Avila v. Pappas,* 591 F.3d 552, 553-554 (7th Cir. 2010) (reaffirming that post-*Johnson* there is still no federal claim for malicious prosecution, only "the attendant custody" following an arrest unsupported by probable cause); *see, e.g., Posey v. Pruger*, 762 F. Supp. 2d 1086, 1093 (N.D. Ill. 2011) (holding that *Johnson's* dicta refers to cases of wrongful arrest).  Furthermore, the court in *Johnson* was explicit that a possible cause of action would only lie if the statute of limitations had not run.  *See Johnson*, 575 F.3d at 663.

First, Petty has not pled a Fourth Amendment claim against the Defendants.  Thus, at the threshold, *Johnson* can not serve as the basis for any cause of action against the Defendants.  However, even if he did plead a Fourth Amendment claim against the Defendants, such a claim would be barred by the statute of limitations.  The statute of limitations in Illinois for a Fourth Amendment claim arising under § 1983, as Petty's would, is two years.  *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993).  Thus, for Petty to maintain a *Johnson*-type Fourth Amendment claim against the Defendants, his claim must have accrued within two years prior to the filing of this suit–meaning after November 30,

2004.[2]  The allegedly wrongful acts by the Defendants occurred in the Fall and Winter of 2003.  Thus, the statute of limitations has run on any Fourth Amendment claim against the Defendants arising out of *Johnson*.  This forecloses any claim that Petty asserts to have as a result of *Johnson*, but the Court must still examine the merit of a substantive due process claim for the circumstances surrounding Petty's arrest and prosecution.

Petty argues that he may maintain "a Fourteenth Amendment due process claim when police manufacture evidence or coerce witnesses and then fail to disclose their involvement in such misconduct."  (Doc. 160, pg. 2, Plaintiff's Response to Defendants' Motion to Reconsider).  Petty claims that the reason he was prosecuted in the first place is because the Assistant State's Attorney was unaware of the circumstances giving rise to the identification obtained by the police.  Petty asserts that the Defendants "ignored an obvious and strong suspect," "failed to investigate [P]laintiff's alibi," "manufactured false identifications against" him, and held Tarver for questioning against his will, ultimately getting him to sign a lineup card which "the police would use as the lynchpin to arrest and prosecute [P]laintiff."  (*Id*., pg. 11).  Petty claims that given these facts, a jury could determine that the Defendants violated his due process rights.  He argues that this result follows from *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988) and *Parish*, 594 F.3d 551 (which is merely a case of the Seventh Circuit reaffirming the principles of *Brady*).  The Court's

---

[2]Petty filed his initial Complaint on November 30, 2006, in the Circuit Court of Cook County. (Doc. 1, Complaint ¶ 1).

Order suggested that a substantive due process claim along these lines may exist. Now, after fully addressing a claim that was not addressed in full in the Order, the Court rejects that suggestion.

As has already been stated, Petty cannot bring a federal constitutional claim for malicious prosecution. *See Newsome*, 256 F.3d at 752. He also cannot recast a Fourth Amendment false arrest (or wrongful arrest) claim into a claim for substantive due process under the Fourteenth Amendment. *See Brooks v. City of Chicago,* 564 F.3d 830, 833 (7th Cir. 2009) (a plaintiff cannot maintain a claim for a due process violation by alleging "that the defendant officers deprived him 'of fair criminal proceedings' by acts including 'not disclosing known exculpatory evidence, perjuring themselves, submitting false charges as contained in the criminal complaints, submitting false police reports, and otherwise acting to deny plaintiff a fair trial.'"); *McCann v. Mangialardi,* 337 F.3d 782, 786 (7th Cir. 2003) (a plaintiff cannot state a claim "by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.").

The Due Process Clause of the Fourteenth Amendment "does not extend so far as to provide relief if a police officer makes a false statement to a prosecutor." *Carvajal*, 542 F.3d at 567 (quoting *Harris v. Kuba,* 486 F.3d 1010, 1017 (7th Cir. 2007) ("[Plaintiff] essentially seeks an extension of *Brady* to provide relief if a police officer makes a false

13

statement to a prosecutor by arguing that an officer is 'suppressing' evidence of the truth by making the false statement. This court has already foreclosed this extension.")); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police testify *truthfully*...") (emphasis in original). Due process does not require that a police officer disclose the circumstances of a coerced confession where the plaintiff is already aware of that information. *See Sornberger*, 434 F.3d at 1029 ("Nor can *Brady* serve as the basis of a cause of action against the officers for failing to disclose the[] circumstances [of a coerced confession] to the prosecutor. *Brady* rights run to the criminal defendant, not to the prosecution."); *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) ("We find the proposed extension of *Brady* [to require detectives to give truthful versions of the coerced individual's statements made at the interrogation] difficult even to understand. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence."). All that the Constitution requires is a process that will enable jurors to sort out the truth. *See Sornberger*, 434 F.3d at 1029 (quoting *Buie v. McAdory*, 341 F.3d 623, 625-626 (7th Cir. 2003) ("...the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies") (internal quotation omitted)).

This is not a case in which the accused did not know about the alleged police misconduct. Petty knew of Tarver's complaints of police misconduct before his trial. (Def.

14

SOF ¶¶ 34-46). Petty claims that the Defendants had a duty to disclose their alleged misconduct at the time Petty was charged with murder. No such obligation exists; the accused do not possess a constitutional right not to be groundlessly prosecuted. *See Bielanski v. County of Kane*, 550 F.3d 632, 638 (7th Cir. 2008) (quoting *Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006) ("[T]he interest in not being prosecuted groundlessly is not an interest that the [Constitution] protects.") (internal citations omitted)); *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) (quoting *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010) ("[I]ndividuals do not have a federal right not to be summoned into court and prosecuted without probable cause, under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause.")). The duty to disclose suppressed evidence under *Brady* only requires the government to turn over the evidence before it is too late for the accused to make use of it at trial. *See Collier*, 301 F.3d 843, 850-851 (assuming that a witness procured an agreement from the government for leniency in exchange for his testimony against the accused, the evidence of that agreement is not "suppressed" within the meaning of *Brady* where the defense learns of the possible agreement before trial and has the opportunity to cross-examine the witness about it at trial). The government is under no obligation to disclose potentially exculpatory information at the time it charges the accused. *See O'Hara*, 301 F.3d at 569 ("The evidence at issue here was not suppressed at all. Though discovered during trial, [the Defendant]

had sufficient time to make use of the material disclosed.  Delayed disclosure of evidence

does not in and of itself constitute a *Brady* violation.").

There is no hybrid substantive due process right comprised in part of a false arrest

claim and in part a malicious prosecution claim.  *See Ienco v. City of Chicago,* 286 F.3d 994,

998 (7th Cir. 2002).  A cause of action arising out of a potentially invalid prosecution should

be addressed through two claims: one for malicious prosecution (which is governed by

state law) and one for false arrest (which is a state law tort and a constitutional tort).  There

is no hybrid due process right.  *See Id.* ("[C]laims of malicious prosecution should be

analyzed not under the substantive due process approach embodied by the malicious

prosecution formula, but under the language of the Constitution itself....[U]nder these

circumstances, the plaintiff must allege that the officers withheld information or evidence

necessary for the fair and impartial trial guaranteed by the U.S. Constitution" pursuant to

*Brady*).

## III.  Conclusion

The Court has reconsidered its prior judgment and concludes that Petty cannot

maintain a *Brady* claim for failure the Defendants' failure to disclose exculpatory evidence.

Having changed that conclusion, the Court now also concludes that Petty has no

substantive due process claim under the Fifth Fourteenth Amendments, and no due

process claim for the Defendants' alleged mishandling of his arrest and prosecution.  There

are no genuine issues of material fact to preclude summary judgment on these two federal claims, and summary judgment is now granted in the Defendants' favor as to Counts I and II of Petty's Complaint.

Because this opinion disposes of Petty's federal claims arising under Federal law, all that remain are the pendent state-law claims sounding in tort for civil conspiracy to imprison and maliciously prosecute, intentional infliction of emotional distress, and indemnity. These pendent state-law claims are before the Court pursuant to its grant of authority under 28 U.S.C. § 1367 to entertain supplemental jurisdiction over such claims appended onto any claim arising under federal law. However, when all of the federal claims that gave rise to original jurisdiction are dismissed, § 1367(c)(3) expressly authorizes the Court to dismiss the pendent state-law claims without having to consider any of the statutory criteria set forth in § 1367(c)(1), (2) or (4). Indeed, there is a judge-made "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). This Court follows that sensible presumption, and therefore declines to entertain supplemental jurisdiction over Petty's pendent state-law claims, and refrains from addressing the issues related to Petty's state-law claims addressed in the Motion to Reconsider. Petty's supplemental state law claims are dismissed and relinquished to state court if Petty chooses to proceed with them in that forum.

17

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: May 31, 2012